**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIE LEE JENKINS,

               Plaintiff,

                                          Case No. 3:15-cv-662-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

Willie Lee Jenkins ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is a result of "depression," "back and knee injury," and "arthritis."  Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed August 4, 2015, at 244 (emphasis and capitalization omitted).  On November 21, 2011 , Plaintiff protectively filed applications for DIB and SSI, alleging an onset disability date of April 22, 2011.  Tr. at 200-03 (DIB), 204-12 (SSI).  Plaintiff's "protective filing date" is listed elsewhere in the administrative transcript as November 1, 2011.  See Tr. at 57, 72, 74, 89, 91, 92, 107, 109, 124, 126.    Plaintiff's

_____

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed August 4, 2015; Reference Order (Doc. No. 14), entered August 5, 2015.

applications were denied initially, see Tr. at 57-71, 72, 127-31 (DIB), 92-106, 107 (SSI), and upon reconsideration, see Tr. at 74-87, 89, 91, (DIB), 109-22, 124, 126 (SSI).

On August 8, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 31-56. On December 19, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claims. Tr. at 10-24. Plaintiff then requested review by the Appeals Council, Tr. at 344-45, and submitted evidence to the Council in the form of a brief authored by his attorney representative. Tr. at 4; see Tr. at 344-45 (brief). On March 27, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On May 29, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

The one overall issue Plaintiff raises on appeal is "whether or not the ALJ's findings were substantially supported." Memorandum in Support of Plaintiff's Position (Doc. No. 23; "Pl.'s Mem."), filed January 11, 2016, at 1, 4 (some capitalization omitted).[2] More specifically, Plaintiff focuses on the following: (1) whether "the ALJ's ultimate and final finding . . . that substance abuse is material from the alleged onset date through the date of [the] [D]ecision is substantially wrong"; (2) whether absent his substance abuse, he was still unable to "sustain work-related activities due to the combination of his impairments"; and (3) whether "the Commissioner's final decision. . . rest[s] upon a vocational hypothetical which

_____

[2]    Citations to Plaintiff's Memorandum refer to the page numbers assigned by the Court's Electronic Filing System.

eg

comprehensively depicts the effects of [his] impairments." Pl.'s Mem. at 4-7 (internal quotations and citations omitted).[3] Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.") on March 11, 2016. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). In addition, the Contract with America Advancement Act of 1996 ("CAAA") (codified as amended at 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J)) "amended the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is

---

[3] In his Conclusion, Plaintiff makes a general reference to Eleventh Circuit law regarding discrediting a claimant's complaint of pain, but Plaintiff otherwise fails to make any argument regarding the ALJ's credibility finding here. Pl.'s Mem. at 7. Thus, any such challenge to the ALJ's credibility assessment has been waived for lack of development. See, e.g., T.R.C. ex rel. Boyd v. Comm'r, 553 F. App'x 914, 919 (11th Cir. 2014) (citing N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) (stating that "[i]ssues raised in . . perfunctory manner, without supporting arguments and citation to authorities, are generally deemed . . . waived")).

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

determined to be a contributing factor material to the determination that a claimant is disabled." Doughty v. Apfel, 245 F.3d 1274, 1275 (11th Cir. 2001).  Accordingly, if an ALJ "determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the [ALJ] then 'must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability.'" Id. at 1279 (quoting 20 C.F.R. § 404.1535).  The "key factor" in this materiality determination "is whether the claimant would still be found disabled if he stopped using drugs or alcohol."  Doughty, 245 F.3d at 1279 (citing 20 C.F.R. § 404.1535(b)(1)).  "[T]he claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination. . . ." Doughty, 245 F.3d at 1281.

Here, the ALJ performed the five-step sequential inquiry twice, as required . See Tr. at 12-24.  In performing the first five-step sequential inquiry, the ALJ assumed Plaintiff was still using drugs and alcohol.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 22, 2011, the alleged onset date."  Tr. at 12 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: mild degenerative disc disease (DDD), degenerative joint disease (DJD) of the knee, depression, post traumatic stress disorder (PTSD), alcohol and drug use." Tr. at 13 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

The ALJ determined that "based on all of the impairments, including the substance use disorders, [Plaintiff] has the residual functional capacity ("RFC") to perform light or sedentary work . . . but he must have no contact with the public or coworkers due to extreme issues with socialization." Tr. at 14 (emphasis and citations omitted). At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 19 (emphasis and citations omitted).

At step five, the ALJ considered Plaintiff's age ("44 years old . . . on the alleged disability onset date"), education ("limited"), work experience, and RFC and determined that "based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 19 (emphasis and citation omitted).

The ALJ then proceeded with a second five-step sequential inquiry and made findings as "if [Plaintiff had] stopped the substance use[.]" Tr. at 20 (emphasis omitted). Here, the ALJ found at step two that "the remaining limitations would cause more than a minimal impact on [Plaintiff's] ability to perform basic work activities; therefore, [Plaintiff] would continue to have a severe impairment or combination of impairments." Tr. at 20 (emphasis omitted). At step three, the ALJ stated that if Plaintiff "stopped the substance use, [Plaintiff] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citations omitted).

The ALJ found that, absent substance use, Plaintiff would have the following RFC:

[Plaintiff could] perform light work as defined in 20 C.F.R. [§] 404.1567(b) as he can lift/carry 20 pounds frequently and 25 pounds occasionally. He can sit,

-5-

stand and walk for 8 hours but should never climb ladders, ropes or scaffolds. He can occasionally climb ramps or stairs. He should not push or pull with his feet but can with his arms. He can occasionally bend, stoop, squat, crouch, crawl or kneel. He has no restrictions on the use of his arms, hands or shoulders. He can hear, see and talk. He should avoid heights and vibration. He is limited to simple 1-3 step jobs with no production pace demands. He can have occasional but superficial contact with coworkers and supervisors. He can be around the public but it should be superficial. He should work with things instead of people.

Tr. at 21 (emphasis omitted). At step four, the ALJ again determined that Plaintiff "does not have past relevant work." Tr. at 23. At step five, the ALJ considered Plaintiff's age, education, work experience and determined, with the assistance of VE testimony, that "there would be a significant number of jobs in the national economy that [Plaintiff] could perform" including "Laundry sorter," "Cleaner," and "Cafeteria attendant," should Plaintiff stop using substances. Tr. at 23 (emphasis and citations omitted). Because the ALJ determined that "substance use disorder is a contributing factor material to the determination of disability," the ALJ concluded Plaintiff "has not been disabled . . . at any time from the alleged onset date through the date of th[e D]ecision." Tr. at 24 (emphasis and citations omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard

is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).   The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As indicated above, Plaintiff raises three issues before this Court.  He first challenges the ALJ's conclusion that his substance abuse was material from the alleged onset date through the date of the Decision, arguing that his substance use had ceased for periods of time during that time frame.  Pl.'s Mem. at 4-5.  Although not clearly articulated, Plaintiff's second argument seems to claim error in the ALJ's RFC assessment because, according to Plaintiff, the combination of his impairments precludes his ability to work even considering cessation of the substance use. Id. at 5-6.  In his third argument, Plaintiff submits that the hypothetical posed to the VE did not accurately depict the effects of his impairments. Id. at 7. The issues are addressed in turn below.

**A. Finding That Substance Use Was Contributing Factor Material to the Determination of Disability**

-7-

Plaintiff contends the ALJ erred in finding that substance use was a contributing factor material to the determination of disability. Pl.'s Mem. at 4. Specifically, Plaintiff argues that the ALJ "overlook[ed] the fact that post-traumatic stress disorder (PTSD) was [P]laintiff's 'principle diagnosis.'" Id. at 4-5. He also contends that the Decision "does not accurately report that [his] substance use did in fact cease." Id. at 5.

On the first point argued by Plaintiff that PTSD was listed as his primary diagnosis by the University of Florida and by Dr. Benjamin Lye, Defendant accurately responds that Dr. Lye listed substance abuse as a diagnosis on both Axes I and IV. Def.'s Mem. at 10 (referring to Tr. at 713-14, 716-17). Additionally, Defendant argues that a diagnosis alone says nothing about the severity of a condition. Id. The Court agrees. See Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (unpublished) (stating that a "mere diagnosis . . . says nothing about the severity of the condition") (internal quotation and citation omitted); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000) (stating that "disability determinations turn on the functional consequences, not the causes, of a claimant's condition").

On the second point, Plaintiff cites to the records from Gateway Community Services that reveal periods of time from June to September 2013 during which Plaintiff was "staying clean and sober." Pl.'s Mem. at 5 (referring to Tr. at 685-87, 689-92). Defendant responds that the ALJ acknowledged Plaintiff's abstinence in 2013, but that "[t]he ultimate issue is not whether Plaintiff continuously abused substances." Def.'s Mem. at 11. Defendant is correct that the issue is "whether Plaintiff was disabled if he [had] stopped his substance use during the relevant period." Id. Noting the ALJ's citation to evidence of a "distinction between

Plaintiff's mental limitations when he is using alcohol and cocaine and periods of abstinence," Defendant argues the ALJ's findings are supported by substantial evidence.  Id. at 12 (referring to Tr. at 13-24).

In determining that Plaintiff's use of drugs and alcohol was a contributing factor material to his disability, in the ALJ's first five-step sequential inquiry, the ALJ explained:

> [T]he evidence shows that [Plaintiff] could do sedentary or light work in that he would require a sit-stand option every thirty minutes and could only occasionally bend, stoop, squat, crouch, crawl and kneel.  However, [Plaintiff] would have extreme socialization issues with no exposure to the public or coworkers due to his use of alcohol and cocaine.  The evidence shows that [drugs and alcohol] do[] affect his personality disorder by making his anger and self-control issue become out of control to the point of him getting arrested and/or getting into fights where he gets hurt.

Tr. at 18.

The Regulations implementing the CAAA state, "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a) (emphasis added).  Because the Regulations contemplate any medical evidence of drug addiction or alcoholism, the CAAA is properly applied when the record contains such evidence and the claimant is found disabled.

The record here is replete with evidence that Plaintiff has had problems with drugs and alcohol.  Plaintiff "has admitted to a history involving alcohol and cocaine dependence." Pl.'s Mem. at 4 (referring to Tr. at 37, 48, 49, 711).  The ALJ noted Plaintiff's admissions, stating:

> [Plaintiff] admitted that he has problems with alcohol and drug use off and on over the past several years yet he was able to stay in his housing for the past 4 years.  He testified that he has a caseworker who comes every month to his house.  He testified that Dr. Lye suggested that he go to drug rehab[ilitation] (Gateway); he has been attending for the past two months.  He testified that he goes every 2 days for about 4 hours and discusses his problems.  He testified that he had done this program back in 2005 (voluntarily).

Tr. at 14.  Further, Plaintiff's substance use, dependence, and abuse are well-documented in the administrative record.  See e.g., Tr. at 358-61, 374-75, 378, 380, 431, 508, 511, 600, 602, 675, 713, 715.

In the ALJ's second five-step sequential inquiry, the ALJ concluded "[i]f the substance abuse had stopped, [Plaintiff's] personality disorder could improve."  Tr. at 20.  In reviewing the medical evidence, the ALJ noted as follows: "[W]hen [Plaintiff] was noncompliant with medications and continued to drink, he reported increased depression.  However, other times, he reported doing 'pretty good' with abstinence and medication usage."  Tr. at 22 (referring to Exhibits 2F/22-25).

The ALJ went on to assess Plaintiff's RFC in the absence of the substance use, Tr. at 21, and concluded that if Plaintiff "stopped the substance use, he would be capable of making a successful adjustment to work."  Tr. at 24.  Based on that finding, the ALJ determined that "substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if he stopped the substance use."  Tr. at 24 (emphasis and citations omitted).  Accordingly, the ALJ applied the correct legal standards (the CAAA and its implementing Regulations) when evaluating Plaintiff's claims, and substantial evidence supports the ALJ's evaluation.  See Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 857 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1535(b)(1),

416.935(b)(1)) (holding that key factor in determining whether a claimant's drug or alcohol addiction is a contributing factor to the determination of disability is whether the claimant would still qualify as disabled if he stopped using drugs or alcohol).  Thus, the Decision is due to be affirmed on this issue.

## B.  RFC Assessment

Plaintiff next argues that "he believes he can not sustain work-related activities due to the combination of his impairments." Pl.'s Mem. at 6 (citation omitted).  He claims that he is unable to "regularly perform the standing, walking and sitting requirements of the light work activities ascribed to him by the ALJ." Id. (citation omitted).  He further contends that "the cessation of previous abuse alone has not enabled [Plaintiff] to return to the workforce." Id. In essence, Plaintiff appears to be challenging the ALJ's RFC assessment.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1545(a)(5).  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions  imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

As noted above, the ALJ determined that in the absence of substance use, Plaintiff

is capable of performing light work with limitations.  Tr. at 21.  In discussing the evidence

supporting his RFC assessment, the ALJ made the following observations:

First, I note that the overall physical exam findings support that [he] would remain limited to light exertional limitations based upon the objective diagnostic testing including MRI of the lumbar spine as well as x-rays of the knees that demonstrated mild DDD and DJD. Moreover, the overall[] treatment for his physical condition has been rather benign. He was seen by an orthopedic specialist but was released with no work restrictions back in 2011. Moreover, I have considered [Plaintiff's] marked pain behaviors that [were] noted in Exhibit[] 6F. I also note[] that [Plaintiff] has demonstrated issues with medication noncompliance, which certainly had played a part in the exacerbation of his mental health symptoms. He admittedly had done well when he was taking his Zoloft as prescribed. In addition, the evidence shows that generally, when [Plaintiff] was noncompliant with medications and continued to drink, he reported increase in depression. However, other times, he reported doing "pretty good" with abstinence and medication usage. Generally, his mental health treatment has been rather unremarkable and consisted primarily of some counseling and medication management. Lastly, I have considered [Plaintiff's] earnings records, which shows rather minimal to low earnings and certainly do[] not enhance his overall credibility.

As for the opinion evidence, I give little weight to the consultative examiner's opinion that [Plaintiff] would have moderate limitations as it is not consistent with the examination findings that showed relatively benign findings except for decreased range of motion of the right lower extremity but otherwise intact 5/5 strength throughout.  Moreover, I note that this is inconsistent with the overall objective diagnostic testing that shows rather benign findings, which would not support the limitations opined by this CE.  As for the opinion of the State Agency physician found at Exhibit 4A/8-11, I give this opinion [ ] little weight. I have considered [Plaintiff's] testimony and viewed the evidence most favorably to [Plaintiff] and found that he is more limited.  As for the opinion of the treating orthopedic provider who placed [Plaintiff] at MMI with no restrictions, I give this opinion some weight to the extent that [Plaintiff] is not as disabled as alleged. However, viewing the evidence most favorably to [Plaintiff], I find that due to his DDD and DJD, he would be more appropriately limited to lifting/carrying 20 pounds frequently and 25 pounds occasionally but precluded from climbing ropes, ladders or scaffolds.  He could occasionally climb ramps and stairs but do no pushing or pulling with his feet.  He could occasionally balance, stoop, squat, crouch, crawl or kneel.  He should not work at heights or with vibrations. As for the opinion of the DDS mental health specialists, I give their opinions

rather great weight to the extent that [Plaintiff] would be limited to simple[,] 3[-]step jobs with no production paced demands, occasional but superficial contact with coworkers and supervisors and can be around the public but the job should have superficial contact with the public.  I note that his personality disorder could improve if the alcohol and cocaine use stopped.  As such, he would be better suited to work with things instead of people because he could tolerate his moods and his medications would work.

Tr. at 22-23 (citations omitted).

The undersigned finds that the RFC assessment is supported by substantial evidence in the record.  Despite Plaintiff's claim that he cannot perform light exertional work as determined by the RFC, he has failed to direct the Court to any objective medical findings demonstrating greater limitations than those assessed.  Accordingly, Plaintiff's argument on this issue fails.

## C.  Hypothetical to the VE

In his final argument, Plaintiff challenges the hypothetical posed to the VE. Specifically, Plaintiff contends that the RFC assessed by the ALJ was flawed and the "first hypothetical more accurately describes his status." Pl.'s Mem. at 7.  The first hypothetical inquired whether an individual could be competitively employed if he "cannot do either sedentary or light work, physically, and has extreme issues with socialization." Tr. at 52. The VE responded that competitive employment would not be available.  Tr. at 53.  In the second hypothetical, the ALJ tracked the RFC in the absence of substance use and posed the following question to the VE:

For the second hypothetical, please consider the following restrictions.  He can lift and carry 20 pounds frequently, 25 pounds occasionally.  He could sit, stand and walk for eight hours, but he should never climb rope, ladder, and scaffolds. He can occasionally climb ramps and stairs.  He should not push or pull with his feet, he can with his arms.  And he can occasionally bend, stoop, squat, crouch, crawl and kneel.  There's no restrictions on the use of his hands, arms and

-13-

shoulders and he can hear, see and talk.  He should avoid heights and vibrations.  The job should be a simple one-to-three step job with no production pace demands.  As far as dealing with others, he can have occasional but superficial contact with co-workers and his supervisors.  He can be around the public, but the job should not require contact with the public.  Again, public contact should be superficial.  It would be better for him to work with things instead of people.  With those limitations, Mr. McKay, would there be any work available in the United States?

Tr. at 53.  In response, the VE opined that there are jobs available as a laundry sorter, cleaner, and cafeteria attendant, and that his testimony was consistent with the Dictionary of Occupational Titles.  Tr. at 53-54.

"[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Winschel, 631 F.3d at 1180 (citation omitted).  Here, the ALJ's second hypothetical, upon which he relied, was consistent with the RFC assessed, compare Tr. at 53 with Tr. at 21, and, as noted above, the Court finds no error in the ALJ's RFC determination.  Because the hypothetical based upon the RFC assessment constitutes substantial evidence supporting the Decision, the Decision is due to be affirmed on this issue.

## V.  Conclusion

Based on a thorough review of the administrative transcript, and upon consideration of the respective arguments of the parties, the Court finds that the ALJ's Decision is supported by substantial evidence.

In accordance with the foregoing, it is hereby **ORDERED**:

-14-

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of

42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final

decision.

2.      The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on May 5, 2016.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

jde
Copies to:
Counsel of record